**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CARMELLE JAMISON**                                                        **PLAINTIFF**

**vs.**                                                        **Case No. 4:14-CV-170-SA-JMV**

**JOURNEY'S**                                                        **DEFENDANT**

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This matter is before the undersigned for report and recommendation on [27] Defendant

Journey's Motion for Summary Judgment pursuant to Fed. R. Civ. Pro. 56.  This is an

employment discrimination case in which Plaintiff, Carmelle Jamison, is *pro se*. Plaintiff has not

offered any argument or evidence in opposition to Defendant's motion for summary judgment,

which is thoroughly supported by a litany of undisputed facts.

For the reasons explained below, the undersigned recommends that Defendant's motion

be granted.

**I.      THE CLAIMS**

**A.      The EEOC Charge**

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity

Commission (EEOC) on March 27, 2014.  (Defendant's Statement of Facts at ¶ 83; Dk. No. 5,

Complaint ¶ 6).  The Charge alleges <u>sex</u> discrimination in violation of Title VII of the Civil

Rights Act of 1964 from October 21, 2013, until January 9, 2014, and nothing more.  The Charge

in relevant part is copied here for reference:

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 423-2014-00892 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Carmelle Jamison** | **(662) 537-1614** | **06-22-1981** |

| Street Address | City, State and ZIP Code |
|---|---|
| **114 Oltremari Lane, Greenville, MS 38701** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **JOURNEYS #0610** | **201 - 500** | **(662) 335-7090** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1651 Hwy. 1 South, Suite 9, Greenville, MS 38701** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 10-21-2013 | 01-09-2014 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for Respondent in June 2010. I was last employed as co-manager at the time of my termination on January 9, 2014 by manager Will Gill.

I believe that I have been discriminated against because of y sex pregnancy, in violation of TII of the 1964 Civil Rights Act as amended.

## RECEIVED

MAR 2 7 2014

## U.S. EEOC/JAO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 3/26/14 *Carmelle Jamison*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

2

Plaintiff received her Dismissal and Notice of Rights on August 28, 2014. (Defendant's Statement of Facts at ¶ 84; Dk. No. 5, Complaint ¶ 8). On November 25, 2014, Plaintiff filed her Application for Leave to File Suit under Title VII of the Civil Rights Act of 1964 without Payment of Fees, Costs, or Security and for Appointment of an Attorney (Docket No. 1, Application for Leave to File Suit …). On December 4, 2014, the Court entered its Order to Proceed In *Forma Pauperis*. (Docket No. 3, Order to Proceed In *Forma Pauperis*). On December 4, 2014, the Court entered its order that denied Plaintiff's request for the appointment of an attorney. (Docket No. 4, Order Denying Motion to Appoint Counsel). Plaintiff filed her present Complaint on December 8, 2014. (Docket No. 5, Complaint; Defendant's Statement of Facts at ¶ 85).

### B.    Plaintiff's Complaint

In Plaintiff's form employment discrimination Complaint, filed December 8, 2014, she does not check the box to indicate that she is pursuing a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII") (Dk. No. 5, Complaint ¶ 1), but Plaintiff does check the box indicating she is pursuing a claim under the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq. ("ADA") for conduct first occurring May 28, 2013, and ending on January 9, 2014, with the termination of her employment (Dk. No. 5, Complaint ¶ 1). Later in the Complaint, however, Plaintiff, also alleges she was harassed and discharged because of her (1) race ("African American"), (2) color ("Black"), (3) sex (stating that "during this time I was pregnant"), (4) religion ("Christian"), (5) national origin ("American"), (6) age (with a date of birth of June 22, 1981), and disability ("heart condition"). (Dk. No. 5, Complaint ¶ 10). As factual support for her claims, Plaintiff alleges in her complaint only the following:

On May 28, 2013 Will Gill call me Carmelle Jamison stating that I needed to report to work because Co manager was quitting. I would have to work from 9 to 9 because she quit. Will Gill did not allow me to promote or hire anyone for the position. When I contact the Area Manager Alicia Terry told me to contact HR dept. HR dept. did nothing which left me in a hostile working environment.

(Dk. No. 5, Complaint ¶ 11).

C.     **The Deposition Testimony**

At her deposition, Plaintiff identified sex/gender/pregnancy, disability and race discrimination as the basis for her claims. In support of them, she testified to the following three sets of events: (1) Her management of and interactions with Rasheedah Smothers, Plaintiff's co-manager (African-American, female) prior to Smothers' resignation on or about May 28, 2013; (2) Defendant's failure to immediately hire a new co-manager for Store 610 when Smothers quit and before Plaintiff went out on maternity leave (in other words, from May 28, 2013, to late June 2013); and (3) the events after she returned from maternity leave up to and including Plaintiff's discharge on January 9, 2014.

1.     **Plaintiff's Management of and Interactions with Smothers Prior to Smothers' Resignation**

Plaintiff testified that she had a conflict with Smothers over who got to take off some or all of Mother's Day in 2013. Plaintiff maintained that she had published a schedule (three weeks in advance) that had Smothers working all day on Mother's Day and that Smothers objected to Will Gill ("Gill"), Plaintiff's supervisor, about this schedule. Plaintiff alleges she was told by Gill that she was being unfair to Smothers, and that if Plaintiff did not change the schedule, then Gill would start making out the schedule himself. Plaintiff and Smothers eventually worked the schedule out between them (Defendant's Statement of Facts at ¶ 20), but Plaintiff explained that she felt that Gill was trying to take her authority away. However, she conceded she had no proof anyone else was treated differently. (Defendant's Statement of Facts at ¶¶ 19-20).

4

Plaintiff also testified that Smothers was caught sitting down for a moment at work and/or breaking other rules such as not having food in the front of the store, talking on her cell phone, ringing up customers while on the cell phone or at least while having her blue tooth in her ear, not checking in a shipment and "stuff like that," and that Smothers did not get fired or sufficiently disciplined (in Plaintiff's view) for the violations. (Defendant's Statement of Facts at ¶ 21).

Smothers resigned on or about May 21, 2013. Her resignation was accompanied by a complaint that her resignation was due to Plaintiff's treatment of her.

### 2. Failure to Immediately Hire a New Co-manager When Smothers Quit

In her deposition, Plaintiff complained that when her co-manager, Smothers, resigned, she was not allowed to hire a new co-manager and that the position was not replaced or filled prior to when she went out on pregnancy related leave. Plaintiff indicated this meant that beginning May 28, 2013, until she went on pregnancy leave in late June 2013, she had to work at the store from open to close, Monday through Saturday, 9:00 a.m. to 9:00 p.m., sometimes prior to opening and/or after close, and from noon to 6:00 p.m. on Sundays (Defendant's Statement of Facts at ¶ 9). Plaintiff was, however, allowed during this period to have part-time hourly employees staff the store.

Plaintiff testified that as to the occurrences, issues and actions prior to her pregnancy leave (the leave extended from late June 2013 until September 19, 2013), the above are the actions on which she bases her claims in this case. (Defendant's Statement of Facts at ¶ 30).

For its part, Defendant asserts – and Plaintiff does not contend otherwise – that during this time frame, Plaintiff received a written counseling for improper stock room organization and

for not completing the daily sales book (Defendant's Statement of Facts at ¶ 31), and on June 5, 2013, Plaintiff failed to meet the store's standards of performance (SOPs) and received a final warning for this unacceptable performance. (Defendant's Statement of Facts at ¶ 32). She was also questioned about an accusation that she was leaving the store contrary to what her time records were showing. (Defendant's Statement of Facts at ¶¶ 11, 33).

### 3. Plaintiff's Return From Maternity Leave and the Events Leading to Plaintiff's Discharge

Plaintiff returned to work following pregnancy leave when she was released on September 19, 2013. (Defendant's Statement of Facts at ¶¶ 34-35). She returned with a work restriction of not more than 45 hours per week, and Plaintiff does not dispute that Defendant accommodated this limitation. (Defendant's Statement of Facts at ¶¶ 37-39). Plaintiff was returned to her same job (store manager) with the same terms of employment at the same store (Store 610) where she had worked when she went out on leave. (Defendant's Statement of Facts at ¶ 35).

When Plaintiff returned from her leave, the person who had filled in as store manager for Store 610 for some of the time while Plaintiff was on leave, Josh Ford (Ford), was moved to co-manager. He thereafter worked under Plaintiff. (Defendant's Statement of Facts at ¶ 40). Store 610 was audited so that the inventory could be established at the point in time at which Plaintiff became responsible for inventory and other store metrics again. (Defendant's Statement of Facts at ¶ 42). At this point, the store was placed back in Plaintiff's name. (Defendant's Statement of Facts at ¶¶ 40, 42). Plaintiff was thereafter responsible for her own performance and for the overall performance of Store 610 until the time her employment was terminated on January 9, 2014. (Defendant's Statement of Facts at ¶ 43).

### 4.      Plaintiff's Issues with Ford

The audit of the store to close out Ford as the responsible manager did not go well as items were missing from the store.  Gill also identified some suspicious activity on the cash register and told Plaintiff to keep an eye on Ford.  (Defendant's Statement of Facts at ¶ 44).

About a month later, in late October 2013, Plaintiff called Gill and said she had come up about 15-17 pairs of shoes short.  Plaintiff testified that Gill came back to the store and said that he felt like Ford was stealing from the store but that since they were in the "blackout" period of the holidays – where no management can be off because it is the busiest time of the year – he would deal with Ford when the holidays were over.  Plaintiff said she was hiring more employees in this timeframe and had about 15 employees in all, including herself and Ford.  (Defendant's Statement of Facts at ¶ 47).

Plaintiff said that she had heard that Ford had carried some bags out at night when Plaintiff was not there.  Plaintiff believed he had been stealing (Defendant's Statement of Facts at ¶ 48), and that on one occasion she had checked a returned product where Ford had exchanged a pair of shoes for damage.  (Defendant's Statement of Facts at ¶ 49).  Plaintiff explained that she found that Ford had switched the returned boots with the boots he was wearing, and he had done it under his employee number and phone number but also as if he was the customer.  (Defendant's Statement of Facts at ¶ 49).  Plaintiff said Ford admitted it, and Plaintiff told him that he could not do that.  (Defendant's Statement of Facts at ¶ 49).  Plaintiff testified she also told Gill who questioned Ford about it.  Plaintiff was not present and does not know what was discussed between Ford and Gill.

Gill told Plaintiff he would have an audit done on the store in January 2014, and that Plaintiff should be looking for a replacement for Ford in the interim. (Defendant's Statement of Facts at ¶ 49). Plaintiff testified that Ford continued to have money coming up "funny," the cash register was coming up short (though six people were involved with the cash registers on a daily basis), or the deposit bag was not closed properly. (Defendant's Statement of Facts at ¶ 50). Plaintiff says she did not/could not catch Ford but says she did not steal anything herself. (Defendant's Statement of Facts at ¶ 51). Plaintiff testified she did not raise any issues with Gill about Ford's conduct after Gill came to the store in late October 2013 to investigate the 17 missing pairs of shoes. (Defendant's Statement of Facts at ¶ 53).

### 5. Plaintiff's Performance Issues

During this time period Plaintiff continued to have performance problems. On September 26, 2013, Plaintiff gave a customer an unauthorized markdown. (Defendant's Statement of Facts at ¶ 54). On October 7, 2013, Gill reviewed Store 610's performance with Plaintiff and advised her that it was not meeting the SOPs. (Defendant's Statement of Facts at ¶ 55). As of October 17, 2013, Plaintiff had failed to conduct and report the required weekly bulk counts for Store 610. On October 19, 2013, Plaintiff submitted incorrect information on Store 610's inventory showing that Store 610's bulk count was over by 4672 pair of shoes. This was a significant error. (Defendant's Statement of Facts at ¶ 57). On October 21, 2013, Plaintiff again submitted incorrect information on Store 610's inventory showing that Store 610's bulk count was under by 492 pair of shoes. This also was a significant error. (Defendant's Statement of Facts at ¶ 58).

On November 11, 2013, Gill advised Plaintiff that for October 2013, Plaintiff's first full month back as store manager for Store 610, she did not meet her numbers and that she had to

improve the numbers for the SOPs. (Defendant's Statement of Facts at ¶ 59). On November 15, 2013, Plaintiff received a customer complaint about a sale where Plaintiff made a mistake. (Defendant's Statement of Facts at ¶ 60). Plaintiff did not meet the SOP number for November 2013. (Defendant's Statement of Facts at ¶ 61).

On December 16, 2013, Gill performed a bulk count at Store 610. The store was missing 14 pairs of shoes. Gill instructed Plaintiff to perform a bulk count every two days and to email him every day about cash refunds being checked. (Defendant's Statement of Facts at ¶ 62). Plaintiff missed the SOP numbers for December 2013. (Defendant's Statement of Facts at ¶ 63). Also, on December 24, 2013, Ford made a complaint against Plaintiff, asserting she was unfair with employees and that some part-time employees were getting special treatment. Ford also reported that Plaintiff intentionally bumped into him in some fashion in front of a customer and that Plaintiff gave a discount to an employee. (Defendant's Statement of Facts at ¶ 64). On December 27, 2013, Plaintiff was further reported to have gotten into an argument with one of the part-time employees. (Defendant's Statement of Facts at ¶ 65). On December 30, 2013, Plaintiff was reported to have had an argument with co-manager, Ford's, girlfriend. (Defendant's Statement of Facts at ¶ 66). On January 8, 2014, Plaintiff and Ford both submitted complaints about the other. (Defendant's Statement of Facts at ¶ 67).

### 6.     The Audit

The Plaintiff's store was audited on January 9, 2014. (Defendant's Statement of Facts at ¶ 68). When the audit was over, Plaintiff was told the results: Store 610 was missing a large amount of inventory (29 pairs of shoes), and there were several returns of shoes that were handled by either the store manager (Plaintiff) or the co-manager (Ford) that were suspicious and indicated theft. (Defendant's Statement of Facts at ¶ 68).

The audit report showed that the missing inventory and the returns, many of which were actually handled by Plaintiff, were significant. The usual practice under these circumstances was to terminate all of the management of the store, and depending on the circumstances, it is also the Defendant's common practice to terminate the employment of all the employees who worked at the store. (Defendant's Statement of Facts at ¶ 69). The returns identified in the audit looked suspicious, and telephone calls to the customers who were documented as making the returns did not result in verification of such returns. Plaintiff had actually handled more of the returns than had Ford. (Defendant's Statement of Facts at ¶ 69). When Gill met with Plaintiff and asked her about the missing inventory and the returns, she denied knowing anything or having any involvement, other than she blamed Ford. (Defendant's Statement of Facts at ¶ 70).

In consultation with other Defendant's management, Gill terminated Plaintiff's employment based on the January 9, 2014, audit results, her SOP failure in performance, and her overall performance. The audit results were unacceptable to such a degree that every other employee in Store 610 was also discharged, and an entirely new staff was brought in to run Store 610. (Defendant's Statement of Facts at ¶ 73).

## II.    APPLICABLE STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The moving party can prove the absence of a genuine issue of material fact by showing that the nonmoving party lacks evidence to support his case. *Id.* A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial, and if the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. *See Anderson*, at 248; *see also Howard v. Miss. State Univ.*, 2015 U.S. Dist. LEXIS 53384, at *7 (N.D. Miss. Apr. 23, 2015).

Where, as here, Plaintiff does not come forward with any proof in response to a Defendant's motion for summary judgment – indeed files no response at all – the record on which the court must decide the motion is that comprised of the Plaintiff's complaint (if verified, as was done here), and the Defendant's unopposed statement of facts, motion and memorandum in support. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (affirming the United States District Court for the Northern District of Mississippi's grant of summary judgment).

## III. ANALYSIS

### A. Failure to Exhaust Administrative Claims

As noted, Plaintiff filed her charge with the EEOC on March 28, 2014, indicating that the basis of that charge was sex discrimination that allegedly took place from October 21, 2013, (earliest) to January 9, 2014, (latest), in violation of Title VII of the Civil Rights Act. No other basis of discrimination was alleged by Plaintiff. In support of her allegation of sex

discrimination, her Charge asserted only that "I began working for Respondent in June 2010. I was last employed as co-manager at the time of my termination on January 9, 2014[,] by manager Will Gill[,]" (Defendant's Statement of Facts at ¶ 89).

On August 25, 2014, the EEOC issued a Notice of Right to Sue, and Plaintiff commenced the instant action on December 8, 2014. (Defendant's Statement of Facts at ¶ 89).

Plaintiff's EEOC charge was filed against Defendant for allegations of sex discrimination under Title VII of the Civil Rights Act. However, her Complaint in the instant action expands the scope of her allegations beyond the sex discrimination claim in her EEOC charge to also include claims that she was harassed and fired because: she is black, is of the African American race, is Christian, is American, has a heart condition, and on the basis that she was "left in a hostile working environment;" due to her age (date of birth: June 22, 1981) in violation of the ADEA[1]; and on the basis that her rights under the ADA were violated.

### 1. The Title VII Claims Aside From Those Based on Gender:

In order to bring claims under Title VII (as well as the ADA and the ADEA), a Plaintiff must first exhaust her administrative remedies. *Hughes v. Hollywood Casino Corp.,* No. 2:07CV026-SAA, 2008 U.S. Dist. LEXIS 46422, at *8 (N.D. Miss. May 22, 2008) (citing *Tolbert v. US*, 916 F.2d 245, 247 (5th Cir. 1990)); *Simmons-Myers v. Caesars Entm't Corp.,* No. 2:10-cv-216-WAP-JMV, 2012 U.S. Dist. LEXIS 97208, at *5-6 (N.D. Miss. July 12, 2012) (finding that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies). As noted by the Supreme Court in *National*

---

[1] It is unclear whether Plaintiff intended to make a claim of discrimination for each of the categories marked on page three of her Complaint (e.g., national origin box checked with description of "American," etc.). However, because all boxes are checked and a descriptor is included for each item, the undersigned addresses each claim.

*Railroad Passenger Corp. v. Morgan*, a Title VII plaintiff has the obligation to file an administrative claim as to each discrete discriminatory act. 536 U.S. 101, 110-114 (2002). As such, Plaintiff's Title VII claims that go beyond the scope of the sex discrimination claims contained in her EEOC charge are barred.

To determine whether a reasonable EEOC investigation could grow out of an administrative charge, a district court focuses on the factual statements contained in the charge. *Id.* (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)). Nowhere in her charge did Plaintiff suggest or reference race or color discrimination, age discrimination, religious discrimination, or national origin discrimination. (Defendant's Statement of Facts at ¶ 90). Thus, Plaintiff failed to exhaust her administrative remedies under Title VII with respect to such allegations in her Complaint based on race, color, religion and national origin.

Further, because the Charge alleges only events between October 21, 2013, (earliest) and January 9, 2014, (latest), all allegations outside of this time-frame are barred. For instance, Plaintiff failed to include any allegation in her Charge that related to her being "left in a hostile working environment" after, as she explained at her deposition, her co-manager, Smothers, quit in May of 2013 until she went out on maternity leave in late June 2013. Yet Plaintiff makes such allegations in the Complaint in this matter. (Defendant's Statement of Facts at ¶¶ 9, 18-30, 34-35).

Additionally, as noted, Plaintiff failed to file an administrative claim alleging that Defendant had created a hostile work environment. As such, this claim should also be dismissed as untimely and for failure to exhaust. *See Sifuentes v. Potter,* No. EP-01-CA-436-DB, 2003 U.S. Dist. LEXIS 3597, at *6 (W.D. Tex. Feb. 12, 2003) (finding that plaintiff alleged only

national origin discrimination and retaliation in his EEO complaints, and the Final Agency Decision addressed only those issues). In *Williamson,* the plaintiff failed to allege a hostile work environment claim in his EEOC charge and the Court found that such claim was barred in his suit. *See Williamson,* 695 F. Supp.2d at 572 (citing *Hill v. Dept. of Veterans Affairs,* No. 08-60532, 2009 U.S. App. LEXIS 2814, at *10 (5th Cir. Feb. 12, 2009) ("an investigation concerning the existence of a hostile work environment would not 'reasonably be expected to grow out of' . . . allegations of these discrete acts of discrimination")). Plaintiff here only alleged sex discrimination in her EEO charge, and the Final Agency Decision addressed only that issue.

### 2. The ADEA Claim

Similarly, the rule in the Fifth Circuit is that the scope of an ADEA complaint filed with the court is limited by the allegations of the Charge and what can reasonably be expected to grow out of the EEOC investigation. *Ghahramani v. BASF Corp.,* 755 F. Supp. 708, 711 (M.D. La. 1991). Plaintiff did not complain of any age discrimination in her EEOC charge, and Plaintiff was admittedly age 33 at the time of the events (Defendant's Statement of Facts at ¶¶ 83, 87-89). Thus, Plaintiff failed to exhaust her administrative remedies as required by 29 U.S.C. § 626(d)(1) and also does not fall into a protected class within the meaning of the ADEA. See 29 U.S.C. § 631(a). Thus, she may not prevail on an ADEA claim.

### 3. The ADA claim

A plaintiff asserting a disability claim under the ADA, 42 U.S.C. §§ 12101, *et seq.*, must also exhaust administrative remedies before commencing an action in federal court against her employer. *See Williamson v. Am. Nat'l Ins. Co.,* 695 F. Supp.2d 431, 472 (S.D. Tex. 2010) (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996)). Failure to exhaust

remedies under the ADA also results in dismissal of claims on the merits, and an ADA action is also limited in scope to Plaintiff's administrative Charge and the EEOC investigation that can reasonably be expected to grow out of the Charge. *Id.* (citing *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). In the instant case, a review of the Charge clearly demonstrates that Plaintiff did not exhaust her administrative remedies with the EEOC regarding any claims of discrimination based on a disability.

**B.    Plaintiff's Claims under Title VII Which Allegedly Arise Prior to October 21, 2013, are Time-Barred**

Most of Plaintiff's allegations as they are explained in her deposition testimony are time-barred in terms of her EEOC charge and when she filed it.[2] Before a Title VII complaint is properly before the Court, a complaint must be timely filed with the EEOC within 180 days after the occurrence of the alleged unlawful employment practice,[3] and a plaintiff must also receive a notice of right to sue. *See* 42 U.S.C. §2000e-5(e)(1); *Ghahramani,* 755 F. Supp. at 710 (citing *Womble v. Bhangu,* 864 F.2d 1212 (5th Cir. 1989)); s*ee also Hughes,* 2008 U.S. Dist. LEXIS 46422, at *8.

A great deal of Plaintiff's allegations as explained in her deposition testimony relate to Plaintiff's management of Smothers, Smothers' resignation, and Plaintiff's hours of work and working conditions following Smothers' resignation up until Plaintiff went out on maternity leave in late June 2013. (Defendant's Statement of Facts at ¶¶ 8-30, 34-35). As was discussed earlier, not only are these claims outside the period of time the Plaintiff complains of in her Charge, they are outside Title VII's 180-day time limit which operates as a statute of limitations.

---

[2] This defense is in the alternative to, and/or in addition to, the defenses based on a complete failure to exhaust the administrative remedies under the various statutes (Title VII, the ADEA and the ADA) because the protected categories were not raised in the Charge, or the events now alleged are beyond the scope the Charge.
[3] The 180-day period begins to run from the time the complainant knows or reasonably should have known that the allegedly discriminatory act occurred. *Vadie v. Miss. St. Univ.,* 218 F.3d 365, 371 (5th Cir. 2000).

The statute "effectively precludes recovery for discrete acts outside the statutory time period." *Williams v. Barnhill's Buffet, Inc.,* No. 2:06CV148-KS-MTP, 2007 U.S. Dist. LEXIS 95568 at *7, 8 (S.D. Miss. January 8, 2008) (citing *Celestine v. Petroleos De Venezuela SA,* 108 F. App'x 180, 185 (5th Cir. 2004); *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232 (5th Cir. 1999).

In this case, Plaintiff filed a charge with the EEOC on March 27, 2014, alleging discrimination due to her sex/gender/pregnancy. The discrete acts about which Plaintiff complains relating to Smothers occurred prior to or around May 2013 (when Ms. Smothers quit), and ended no later than when Plaintiff went out on her leave in late June 2013. (Defendant's Statement of Facts at ¶¶ 8-30, 34-35). These events concluded long before the start of the 180-day period, which ran from March 27, 2014, (when she filed her Charge) back to September 26, 2013. Plaintiff was not even present in the work place but was on leave through July 2013, August 2013, and over half of September 2013, returning to work on September 19, 2013. (Defendant's Statement of Facts at ¶¶ 34-35). Applying 42 U.S.C. § 2000e-5 to Plaintiff's allegations, any of Plaintiff's claims that are based on the alleged events involving Smothers, her resignation, and Plaintiff's work following Smothers' resignation up until Plaintiff went out on her leave in late June 2013, are time barred.[4]

---

[4] This untimeliness is further evidenced by the allegations in Plaintiff's Charge that the earliest of the alleged discrimination occurred on October 21, 2013. (Defendant's Statement of Facts at ¶ 89). On the other hand, Defendant's further assertion that the complaint was not filed within 90 days of Plaintiff's receipt of a notice of right to sue, is, while accurate, without merit. It is clear that the running of a limitations period against the government is tolled during the pendency of a plaintiff's successful motion to proceed in *forma pauperis*. *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1392–93 (5th Cir.1991). And, the limitations period is tolled for reasonable time after pauper application is denied. *Mealancon v. Associated Catholic Charities of New Orleans, Inc.,* No. 96–2084, 1997 WL 194620 (E.D.La. Apr. 22, 1997) (Africk, M.J.) Under circumstances where, as here, the clerk is responsible for filing the complaint once IFP is granted, equitable tolling is appropriate.

### C. The Substantive Merits of Plaintiff's Title VII Claims

Title VII intentional discrimination claims can be proven by either direct or circumstantial evidence. *Jackson v. Watkins,* 619 F.3d 463, 466 (5th Cir. 2010). In order for the evidence to be direct, it must, if believed, prove the fact at issue without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 415 (5th Cir. 2003). Here, Plaintiff does not have direct evidence of sex discrimination or any of the other types of discrimination alleged in her Complaint, so Plaintiff's claims must be analyzed under the *McDonnell Douglas* burden-shifting framework to determine whether the claims of discrimination can survive. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)*; see Howard*, 2015 U.S. Dist. LEXIS 53384 at *13; accord *Jackson v. Cal Western Packaging Corp.,* 602 F.3d 374, 378 (5th Cir. 2010) (circumstantial evidence of age discrimination analyzed under *McDonnell Douglas* burden-shifting framework).

*McDonnell-Douglas* provides that the Plaintiff must first establish a prima facie case. If the Plaintiff does so, then the burden shifts to the Defendant to articulate a legitimate non-discriminatory reason for its adverse decision/action. *Id.* Once the Defendant meets this burden of production, Plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either: (1) the employer's proffered reason is a pretext for discrimination, or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *See Chu v. Mississippi State Univ.,* No. 14-60129 592 F. App'x 260, 264 (5th Cir. Nov. 17, 2014).

Although the *McDonnell Douglas* presumption shifts the burden of production to the Defendant, Plaintiff bears the burden of proof at all times to show intentional discrimination. *St. Mary's Honors Center v. Hicks,* 509 U.S. 502, 507 (1993) (quoting *Texas Dept. of Community*

*Affairs v. Burdine,* 450 U.S. 248, 253 (1981) ("[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.))

### 1.    Plaintiff Fails to Establish a Prima Facie Case

Under *McDonnell Douglas,* in order to establish a *prima facie* case of discrimination under Title VII, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated employees under nearly identical circumstances. *McDonnell Douglas,* 411 U.S. at 802.

Plaintiff meets element (1) in that she is female and has been pregnant[5] (and as far as that is concerned, race and/or disability as well) and element (3) in that she was discharged. However, Plaintiff's testimony points to nothing that would establish elements (2) and (4) in that during the relevant time (October 21, 2013, up to Plaintiff's discharge on January 9, 2014). Plaintiff fails to meet element (2) because of her own demonstrated performance issues and the unacceptable audit for Store 610 in January 2014. Further, Plaintiff fails to meet element (4) in that Plaintiff was held to the same standards as others in her role as store manager for Store 610 and when Plaintiff's employment was terminated on January 9, 2014, she was not treated less

---

[5] Sex, gender, and pregnancy are protected categories. A recent decision of the Supreme Court of the United States held that pregnancy may even require accommodation under Title VII. *Young v. United Parcel Service, Inc.*, No. 12-1226, 2015 WL 1310745 (March 25, 2015); *see also Luke v. CPlace Forest Park SNF, LLC,* No. 14-31347, 2015 WL 3827361 (5th Cir. June 22, 2015) (vacating prior grant of summary judgment of plaintiff's Title VII claims involving UPS' decision to decline to accommodate plaintiff during pregnancy in light of the intervening decision of *Young v. United Parcel Service, Inc.*, which abrogated precedent in the 5th Circuit). In this case, Plaintiff asserted that when she returned to work on September 19, 2013, as store manager for Store 610, she was limited to working only 45 hours per week. (Defendant's Statement of Facts at ¶ 37). Plaintiff was told that Defendant would accommodate her restriction, and Plaintiff was advised that she was not to work in excess of 45 hours each week. Plaintiff had the freedom and responsibility to monitor her own hours of work as she was the on-site store manager for Store 610. The undisputed facts from Plaintiff's own testimony, as well as from Defendant's other proof, show that Plaintiff's 45 hour per week restriction was accommodated. (Defendant's Statement of Facts at ¶¶ 37-39).

favorably than similarly situated employees/store managers under nearly identical circumstances. As discussed, all employees in Journeys Store 610 were terminated after the January 9, 2014, audit because the results were so unacceptable. (Defendant's Statement of Facts at ¶¶ 68, 73-78).

### 2. Defendant Has Offered a Legitimate, Non-discriminatory Reason for Its Action

Even if Plaintiff had established a *prima facie* case, Defendant has also offered a legitimate, non-discriminatory reason for its decision regarding Plaintiff's termination. (Defendant's Statement of Facts at ¶ 72). Defendant has explained the reasons behind the decision and has offered proof that Defendant has historically made the same decision as related to other store managers who were similarly situated. (Defendant's Statement of Facts at ¶¶ 72-78).

This decision was a legitimate, non-discriminatory exercise of Defendant's business judgment. *See Deines v. Tex. Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 278 (5th Cir. 1999) ("Whether an employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide.); *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) (the law is clear that "discrimination laws [are not] vehicles for judicial second guessing of business decisions.")). Plaintiff has failed to proffer *any* evidence or even argument to show that Defendant's decisions were motivated by discriminatory animus. *See Delphin v. Grayson County,* 2012 U.S. App. LEXIS 16384 *14 (5th Cir. 2012) (quoting *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995) (At the summary judgment stage, "the question is not whether [Defendant] made an erroneous decision; it is whether the decision was made with discriminatory motive."))

### 3.  Plaintiff Cannot Establish an Issue of Fact as to Pretext

Assuming *arguendo* that Plaintiff has made a *prima facie* case, Defendant has sufficiently rebutted this presumption with legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff.  As a result, the Court must next examine whether Plaintiff has presented sufficient evidence to create a genuine dispute of material fact that Defendant's proffered reason is merely a pretext for discrimination, which she has not attempted to do and which the evidence before the court dictates she cannot do.  *See Vaughn v. Woodforest Bank,* 665 F.3d 632, 636 (5th Cir. 2011).

In order to raise a genuine dispute of material fact with respect to pretext, a nonmovant must come forward with specific facts; "[c]onclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Lazarou v. Miss. State Univ. and Bd. Of Trs.,* 923 F. Supp.2d 882, 894 (N.D. Miss. 2013) (citing *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002) ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Daniel v. Universal ENSCO, Inc.,* No. 11-20654, 507 F. App'x 434, 439 (5th Cir. Jan. 15, 2012) (per curiam) (quoting *Bauer v. Albemarle Corp.,* 169 F.3d 962, 967 (5th Cir. 1999) (in turn quoting *E.E.O.C. v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1443-44 (5th Cir. 1995) (internal quotation marks omitted)).

Here, Plaintiff admitted that she was placed back in the store manager position and was responsible for Store 610 and its performance, that there were inventory issues, and that the January 9, 2014, audit was not acceptable.  The audit results show Plaintiff had handled six return transactions (as opposed to Ford's four) that were identified as an indication of theft. (Defendant's Statement of Facts at ¶¶ 68-70).  There also was a significant amount of inventory

missing.  Plaintiff has testified that her store manager job had performance standards applicable to her both for her personally and for the store (Defendant's Statement of Facts at ¶¶ 2, 17, 42-43), and Plaintiff has also admitted there were inventory problems and theft problems (Defendant's Statement of Facts at ¶¶ 68-70).  However, Plaintiff basically blamed Josh Ford for the missing inventory and the thefts.  (Defendant's Statement of Facts at ¶¶ 45-53, 69).  Plaintiff and everyone else in the store were discharged.  (Defendant's Statement of Facts at ¶ 73).  And Defendant has offered proof that other store managers were discharged under similar circumstances.  (Defendant's Statement of Facts at ¶¶ 73-78).  Plaintiff has offered no proof that creates an issue of fact as to pretext for discrimination.

### 4.     Harassment/Hostile Work Environment Claim.

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex[6] has created a hostile or abusive work environment.  The essential elements of a hostile work environment claim under Title VII are: "(1) she belongs to a protected class; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known and failed to take remedial action."  *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2003).  Generally speaking, only the first four elements need to be satisfied when the alleged harasser had "supervisory authority" over the employee.  *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

Furthermore, "[s]exual harassment is actionable under Title VII only if the harassing conduct is sufficiently *severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment."  *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th

---

[6] A similar standard would apply to disability under the ADA and age under the ADEA or any other categories under Title VII itself.

Cir. 2012) (*citing Harvill v. Westward Commc'ns*, 433 F.3d 428, 434 (5th Cir. 2005) (emphasis added)).   To determine whether conduct is sufficiently severe or pervasive, the court will consider "all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 188-89.  *See also Paul v. Northrup Grumman Ship Sys.*, 2009 U.S. App. LEXIS 2230, *7 (5th Cir. Feb. 5, 2009) (referring to this test as the "totality of the circumstances test").   "Simple teasing, offhand comments, and isolated incidents," unless sufficiently severe, do not amount to actionable harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Finally, the conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

During the relevant time (October 21, 2013, roughly corresponding to Plaintiff's return from her leave on September 19, 2013, to her discharge on January 9, 2014), Plaintiff has offered no proof of any conduct that resembles harassment, based on sex and which affected a term of her employment as contemplated by a claim of a hostile work environment.  Instead, the proof shows that Gill, her supervisor, thought that both Plaintiff as store manager and her Store 610 had performance issues and that on January 9, 2014, while Plaintiff was the store manager, Store 610 had a very bad audit in which Plaintiff was identified as having been involved in return transactions with theft implications.  (Defendant's Statement of Facts at ¶¶ 34-40, 54-73).

There is simply nothing to make Plaintiff's discharge, etc., about sex, race, or any other protected category.  It is significant that Plaintiff has not pointed to a single "stray remark" type of proof.  (Defendant's Statement of Facts at ¶ 79).   For sexual (or any other kind of) harassment

to be actionable, it must be sufficiently severe or pervasive to alter or the conditions of the victim's employment and create an abusive working environment. Only if the court concludes that the prohibited conduct (based on a protected category) would adversely affect the work performance and the well-being of both a reasonable person and the particular plaintiff bringing the action may it find that a defendant has violated a plaintiff's rights under Title VII.[7] Defendant merely held Plaintiff to her job duties and the standards applicable to others doing the same job. The conduct involved in this case is not based on a protected category and is not severe or pervasive as a matter of law. Plaintiff fails to meet her essential elements (2), (3), and (4).

## IV.     CONCLUSION

For the forgoing reasons, summary judgment for Defendant on all claims is recommended.

Respectfully submitted this, the 23rd day of November, 2015.


/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[7] The work environment from May 26, 2013, (or May 21, 2013) after Smothers' resignation until Plaintiff's leave began in late June 2013 is also not "hostile" under the applicable standard and is not based on or connected to any protected category. Any claim under Title VII (and the ADA or ADEA) for that period is untimely.